IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CARMELLA CATERINA GARDNER,**          Case No. 1:16 CV 1839

      Plaintiff,

      v.          Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.          MEMORANDUM OPINION AND ORDER


## INTRODUCTION

Plaintiff Carmella Caterina Gardner ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73 (Doc. 14). For the reasons stated below, the undersigned reverses the Commissioner's decision and remands for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB in January 2013, alleging a disability onset date of June 1, 2009. (Tr. 224-25). Her claims were denied initially and upon reconsideration. (Tr. 136-42). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 143). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on February 11,

2015. (Tr. 68-107).[1] On March 24, 2015, the ALJ found Plaintiff not disabled in a written decision. (Tr. 38-46). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-7); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on July 21, 2016. (Doc. 1).

## FACTUAL BACKGROUND[2]

### Personal Background, Statements, and Testimony

Plaintiff was born in February 1950 and was 59 years old at her alleged onset date. (Tr. 59). At the time of the hearing, Plaintiff lived alone, Tr. 76, in a two-story house, "but [her] living [was] on the first floor only", Tr. 77-78. She did not go upstairs because it was "too much of a chore" and she had "fallen down those stairs too many times." (Tr. 78). Plaintiff testified that after her hip replacement, she had "no balance anymore" and had "to hold onto something." (Tr. 85). Last time she climbed the stairs in her house, when coming back down "it seemed like [she] went numb on one side and [she] ended up just rolling down the stairs." (Tr. 86).

Plaintiff's husband and son accompanied her to the hearing. (Tr. 78). Plaintiff saw her son approximately every other day, and her daughter once per week. (Tr. 79). Plaintiff testified her adult children helped with "the heavy stuff" like mopping and vacuuming. (Tr. 77). She was able to do her own laundry, wash dishes, and prepare simple meals for herself, primarily in the microwave. *Id.* Plaintiff testified she could do her own grocery shopping "and [her] kids pick[ed]

---

1. The ALJ originally held a hearing on October 21, 2014, at which Plaintiff did not appear due to illness. (Tr. 53-67). A VE testified at the October 2014 hearing, and a different VE testified at the February 2015 hearing. *See* Tr. 60 & 101.
2. Plaintiff's challenge is directed at the ALJ's consideration of her credibility regarding her physical limitations. Plaintiff has waived argument on issues not raised in her opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). The Court will therefore summarize the facts relevant to the credibility argument raised by Plaintiff.

up a lot of things for [her]" because if she walked around the grocery store, she could not "even get [her] groceries back into the house right away." *Id.*

Plaintiff was able to drive, but did not drive long distances. (Tr. 78). She liked to read, and watch television, but did not use a computer. (Tr. 80). Her pain would sometimes interfere with her reading: "if I sit there too long either one side gets stiff or I just need to un-stiff myself and change positions or put the book down and try to get up and move a little bit." (Tr. 99). Plaintiff had friends with whom she tried to get together every couple of months for lunch or a visit. (Tr. 80). She would, however, frequently cancel outings, and her friends would come to her house instead. (Tr. 99).

Plaintiff testified that on a typical day, she would sleep a lot (due to her medications and poor night sleep). (Tr. 81). She testified to difficulty sleeping at night, and would nap during the day to make up lost sleep. *Id.*; Tr. 96-97. Typically, she estimated, she would sleep for two to three hours during the day. (Tr. 97).

Plaintiff testified she left her prior job as a realtor because "[i]t became too physical, too demanding and [she] just couldn't keep appointments that [she] had set because [she] was starting to feel really bad and it got in the way of losing [her] clients or having to give them to somebody and then it was just the patience it takes to deal with someone making a large purchase." (Tr. 83). When she first left the work, "it was tiredness" and "aches and pains" that made her leave. (Tr. 84). Before she stopped working, Plaintiff would nap after work. (Tr. 98).

Plaintiff testified that she tried not to take any pain medication, but did use a muscle relaxer approximately once per month. (Tr. 93). She dealt with her pain by stretching, laying down, and avoiding activities that caused her pain. *Id.*

Plaintiff estimated she could stand for 20 to 30 minutes before needing to sit down. (Tr. 93-94). Standing was worse on harder surfaces. (Tr. 94). Plaintiff also estimated she could sit for 30 to 45 minutes "depending on what [she was] sitting on." (Tr. 95). Plaintiff generally sat in a recliner so she could elevate her legs. (Tr. 96); *see also* Tr. 99-100 ("Well I don't sit on the couch, I may lie on the couch but I'm always in my recliner."). Standing was "harder" than sitting. (Tr. 99).

In February 2013, Plaintiff completed a symptom report describing her symptoms as including pain, fatigue, agility, stamina, sleep problems, and stiffness. (Tr. 259). She reported the symptoms were "always there" but got worse when she walked, sat, slept, did daily tasks, or cleaned. *Id.* She indicated her pain and fatigue were nine out of ten on a good day, and ten out of ten on a bad day. (Tr. 260). She reported she had zero good days in a week; rather, she had all bad days. *Id.* Plaintiff also reported she could not bend, stoop, or walk for any length of time. (Tr. 261). Rest and warm or hot showers helped her pain. *Id.* She reported she was not taking any medication for her symptoms. *Id.*

In a disability report dated April 2013, Plaintiff reported difficulty getting in and out of bed. (Tr. 278). She also reported her son helped her to shower, and she had dropped hot food when she tried to cook. *Id.* She reported "[n]eck and knee pain" and that she "ha[d] to be on anti-depressants (because of [her] depression [she was] unable to work)". *Id.*

### Relevant Medical Evidence

#### Treatment Evidence

A December 2008 MRI of Plaintiff's cervical spine showed degenerative changes at the C4/5 and C5/6 levels. (Tr. 424).

In February 2009, Plaintiff saw Shreeniwas Lele, M.D., with neck pain, going down her arm. (Tr. 386). Dr. Lele noted, among other things, "[n]eck pain, with radiculopathy", referred her "for possible neck operation", and suggested she try physical therapy. *Id.*

X-Rays taken of Plaintiff's right knee in July 2010 due to "[t]rauma" showed "[s]mall spurring . . . at the insertion of the quadriceps tendon, but no joint effusion, fracture, or dislocation. (Tr. 419). An X-ray of Plaintiff's left hip the same day showed "advanced osteoarthritis" which was "stable from [the] prior study [in June 2010]." (Tr. 420).

A few days later, also in July 2010, Plaintiff reported to the emergency room after a fall in which she fractured her hip. (Tr. 311, 314-16). She was admitted to the hospital for five days, during which time she underwent a "[c]losed reduction, cannulated hip screw fixation, right hip." (Tr. 314). Subsequent x-rays in September and October 2010 showed a stable radiographic appearance of orthopedic screws without evidence of hardware failure. (Tr. 415-16).

In April 2011, Plaintiff returned to Dr. Lele complaining of fatigue as well as "excruciating neck pain, going into arm and legs." (Tr. 377). On examination, Dr. Lele found diffuse tenderness in Plaintiff's neck, as well as pain along the right arm. *Id.* She also noted "some arthritis and pain" in the right arm and leg, but normal sensory and motor functioning. *Id.* Dr. Lele assessed neck pain, radiculopathy and arthritis, prescribed Vimovo, and noted she would monitor Plaintiff. *Id.*

In August 2011, Plaintiff returned to Dr. Lele, who noted "[o]verall, she is feeling well." (Tr. 376). Her arthritis was "[s]omewhat . . . bothering her." *Id.* She also reported her "[a]nxiety and stress" were "okay". *Id.* On examination, Dr. Lele noted "[m]inimal swelling and tenderness present". *Id.* She assessed osteoarthritis and advised Plaintiff to continue her current medications. *Id.*

In September 2014 (three years later), Plaintiff returned to Dr. Lele with pain behind her right knee, with redness and swelling. (Tr. 453). She reported pain that was seven out of ten. *Id.* Plaintiff also reported feeling fatigued and weak. *Id.* On examination, Dr. Lele noted a red, inflamed area on Plaintiff's right thigh, which she opined might be a boil or staph infection. *Id.* She assessed cellulitis and prescribed medication. (Tr. 454).

In October 2014, Plaintiff returned to Dr. Lele reporting "excruciating back pain going on in her leg" and "not feeling well". (Tr. 448). Her back pain was "getting worse", the pain "was going in her legs", and she had "[d]ifficulty walking on and off." *Id.* On examination, Dr. Lele found diffuse tenderness and painful movement in Plaintiff's back. *Id.* Dr. Lele assessed back pain with radiculopathy and prescribed physical therapy. (Tr. 449).

*Medical Opinion Evidence*

*Consultative Examination*

At a consultative examination with Naomi Waldbaum, M.D. in September 2011, Plaintiff reported pain, stiffness, and numbness in her feet, leg, and low back. (Tr. 339). Dr. Waldbaum noted Plaintiff underwent back surgery in 2011, and hip surgery in 2010. *Id.* On examination, Dr. Waldbaum found Plaintiff had full strength in her upper and lower extremities, as well as normal grip, manipulation, pinch, and fine coordination. (Tr. 335). No muscle atrophy was noted, and Plaintiff had normal range of motion in her cervical spine, shoulder, elbow, and wrist. (Tr. 336). Plaintiff had some reduced range of motion in her dorsolumbar spine (under which Dr. Waldbaum added "no discomfort noted") (Tr. 337), and some reduced range of motion in her hip (Tr. 338). Her straight leg raising test was normal. (Tr. 340). Dr. Waldbaum noted Plaintiff had "mild discomfort palpating the lumbosacral angle area and over the right sacroiliac joint area." *Id.* In conclusion, Dr. Waldbaum noted Plaintiff's "[e]xamination reveal[ed] a very functional client with

no significant abnormal pathology" who she believed was "capable of performing many different types of sedentary to light type work activities." (Tr. 341). A lower back x-ray taken for purposes of the consultative examination showed "[r]eversal of normal lumbar lordosis, "[e]nd plate sclerosis and spur formation", and "mild narrowing of L4-L5 disc space." (Tr. 333)

*Reviewing Physicians*

In March 2013, state agency physician Maria Congbalay, M.D., reviewed Plaintiff's records at the request of the state agency. (Tr. 115-16). She concluded Plaintiff could perform light work, with postural limitations of: 1) frequent climbing of ramps and stairs; 2) stooping, kneeling, crouching, and crawling; and 3) never climbing ladders, ropes, and scaffolds. (Tr. 116). She noted these limitations were due to back pain. *Id.*

In May 2013, state agency physician Eli Perencevich, D.O., reviewed Plaintiff's records at the request of the state agency. (Tr. 126-27). He reached the same conclusions as Dr. Congbalay, but added a further limitation that Plaintiff should avoid even moderate exposure to hazards such as machinery or heights. (Tr. 127).

*Treating Physician*

In October 2014, Dr. Lele completed a pain questionnaire, which requested her answers address "the time period from Condition prior 12/31/11 through the present." (Tr. 435). She listed, as Plaintiff's impairments: back pain and COPD. *Id.* She listed an MRI as the objective clinical findings supporting Plaintiff's pain. *Id.* In response to a question about whether Plaintiff's pain affected her ability to do work-related activities, Dr. Lele noted that Plaintiff "can't bend" when her pain flares up. *Id.* She also opined there was a psychological component to Plaintiff's allegations of pain, and that Plaintiff's pain frequently interfered with her attention and concentration. *Id.*

The next day, also in October 2014, Dr. Lele completed a document entitled "Medical Statement – Physical Abilities and Limitations – CONDITION PRIOR 12/31/11 AND CONTINUING." (Tr. 438). In it, she opined Plaintiff could only work four hours per day. *Id.* She thought Plaintiff could sit or stand for four hours in a workday, 30 minutes at a time. *Id.* She believed Plaintiff could lift ten pounds occasionally, and five pounds frequently. *Id.* Dr. Lele opined Plaintiff could occasionally: 1) bend, 2) stoop, 3) balance, 4) raise right arm to shoulder level, 5) work around dangerous equipment, 6) operate a motor vehicle, 7) tolerate heat or cold, 8) tolerate dust, smoke or fumes, 9) tolerate noise, and 10) tolerate heights. *Id.* She opined Plaintiff could frequently perform fine and gross manipulations with both hands. *Id.* Dr. Lele opined Plaintiff would need to frequently elevate her legs above waist level in an eight-hour workday. *Id.* Finally, she opined Plaintiff experienced "moderate" pain and she would expect Plaintiff's impairments to cause her to be absent from work about twice per month. *Id.*

### *VE Testimony*

Two hearings were held in this case, and a VE testified at each. *See* Tr. 60-68, 101-05.

In October 2014, VE Carol Mosley testified before the ALJ. (Tr. 60-68). The VE opined Plaintiff had past work as a realtor and as a server, both light exertional jobs as generally performed and actually performed. (Tr. 61).

The ALJ asked the VE to consider a hypothetical individual with the same age, education and past work as Plaintiff who could: 1) perform light work, with unlimited push/pull other than as limited for lift and or/carry; 2) frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds; 3) frequently stoop, kneel, crouch, and crawl; but 4) must avoid even moderate exposure to hazards such as unprotected heights and hazardous machinery. (Tr. 62). The VE testified such an individual could return to her past work as a realtor or server. *Id.*

The ALJ then asked the VE to consider a hypothetical individual with the same prior postural restrictions, but who could: 1) occasionally lift and carry ten pounds; 2) frequently lift and carry five pounds; 3) stand and walk two hours in an eight-hour workday; 4) and sit for six hours in an eight-hour workday. (Tr. 63). The VE testified that such an individual could not perform past work, but could perform the sedentary job of real estate clerk. (Tr. 63-64).

Plaintiff's counsel asked the VE to add a limitation that the person would need to have a sit/stand option every 30 minutes, where the person would need to walk away from the work area every hour. (Tr. 64-65). The VE testified that person would not be able to sustain competitive employment. (Tr. 65). Without the requirement that the person need to leave the work area, the VE testified the person could still perform the previously identified real estate clerk position. (Tr. 65-66). Additionally, the VE testified that under the first or second hypothetical situation, if one added a limitation that the person would be absent twice per month, the person would have difficulty maintaining competitive employment. (Tr. 66).

In February 2015, VE Kevin Yi testified at the hearing before the ALJ. (Tr. 101-05).

The ALJ first asked the VE if there would be any jobs where an individual could be absent from work twice per month. (Tr. 102). The VE responded that no unskilled jobs would be available to such an individual, but "[f]or skilled jobs normally it's different and I mean . . . take a realtor for example, as well you can schedule out of time normally is a lot." *Id.* The VE testified that in general, an absentee rate of two to four days per month would be tolerated in a skilled job. *Id.*

The VE also testified that if an individual needed to frequently elevate their legs above waist level, there would be no competitive employment for unskilled jobs, and even in skilled jobs, such a restriction would require an accommodation from the employer. (Tr. 102-03).

The ALJ then asked the VE to consider a hypothetical individual with the same age, education, and past work as Plaintiff who could: 1) occasionally lift ten pounds; 2) frequently lift five pounds; 3) stand and walk for four hours of an eight-hour workday, 30 minutes at a time; 4) sit for four hours in an eight-hour workday, 30 minutes at time; 5) occasionally bend, stoop, and balance; 6) frequently perform fine and gross manipulation bilaterally; 7) occasionally raise arms over the shoulder level bilaterally; 8) occasionally tolerate heat, cold, dust, smoke, fumes, or heights; 9) would need to frequently elevate their legs above waist level; and 10) would be absent from work twice per month. (Tr. 103-04). The VE testified that such an individual could not perform any jobs "full-time competitively." (Tr. 104).

***ALJ Decision***

In a written decision dated March 24, 2015, the ALJ found Plaintiff last met the insured status requirements for DIB on December 31, 2011, and had not engaged in substantial gainful activity from her alleged onset date of June 1, 2009, through her date last insured. (Tr. 40). She concluded Plaintiff had severe impairments of degenerative disc disease and osteoarthritis, and that these impairments did not meet or equal a listed impairment. (Tr. 40-43). The ALJ then found Plaintiff retained the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b), subject to the following limitations. The claimant can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. Further, the claimant can frequently stoop, kneel, crouch, and crawl, but must avoid even moderate exposure to hazards such as unprotected heights and hazardous machinery.
> .

(Tr. 43). Based on this RFC, the ALJ found Plaintiff was capable of performing her past work as a realtor, and therefore, she was not disabled. (Tr. 46).

**STANDARD OF REVIEW**

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

**STANDARD FOR DISABILITY**

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1.      Was claimant engaged in a substantial gainful activity?

2.      Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.      Does the severe impairment meet one of the listed impairments?

4.      What is claimant's residual functional capacity and can claimant perform past relevant work?

4.      Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

### DISCUSSION

Plaintiff raises a single objection to the ALJ's decision—that the ALJ erred in her analysis of Plaintiff's subjective symptom reports. (Doc. 17). Specifically, Plaintiff argues the ALJ failed to comply with Social Security Regulation ("SSR") 16-3p in that she "provided [a] . . . boilerplate conclusion regarding [Plaintiff's] statements" and did not consider the other factors required by the regulation. *Id.* at 11. The Commissioner responds that the ALJ properly addressed Plaintiff's statements, the RFC is supported by substantial evidence, and there was no error. (Doc. 19). For the reasons discussed below, the undersigned agrees with Plaintiff that the ALJ erred in her credibility analysis and remand is required.

The Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 800-01 (6th Cir. 2004) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). In determining whether a claimant has disabling pain, the regulations require an ALJ to consider certain factors including: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication, to relieve pain; 6) any measures used to relieve pain; and 7) other factors concerning

functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *3 ("20 CFR 404.1529(c) . . . describe[s] the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements"). Although the ALJ must "consider" the listed factors, there is no requirement that the ALJ discuss every factor. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009); *Roberts v. Astrue*, 2010 WL 2342492, at *11 (N.D. Ohio).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. An ALJ's finding that a claimant's subjective allegations are not fully supported is a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x. 508, 511 (6th Cir. 2013) (citation omitted). Nevertheless, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2. Moreover, the regulation at issue states

specifically that the ALJ "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability work *solely* because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2) (emphasis added).

As a preliminary matter, the undersigned notes that Plaintiff frames her argument specifically in reference to SSR 16-3p, 2016 WL 1119029. This regulation supersedes SSR 96-7p, 1996 WL 374186, however, SSR 16-3p's effective date in March 2016 post-dates the ALJ's March 2015 decision. Plaintiff does not present a specific argument regarding retroactivity, and in her reply brief, frames the issue as "the ALJ's assessment of Plaintiff's statements failed to comply with SSR 96-7P *and* SSR 16-3P." (Doc. 20, at 1) (emphasis added). District courts within this Circuit have disagreed regarding the retroactivity of SSR 16-3p and the Sixth Circuit has not decided the issue.

Those courts applying SSR 16-3p retroactively have relied on the fact that SSR 16-3p's purpose was clarification, rather than change. *See, e.g., Sypolt v. Berryhill*, 2017 WL 1169706, at n.4 (N.D. Ohio) (applying SSR 16-3p retroactively). Those courts declining to apply SSR 16-3p retroactively have relied upon prior Sixth Circuit statements regarding retroactivity in social security cases. *See, e.g., Brothers v. Berryhill*, 2017 WL 2912535, at *10 (N.D. Ohio) (collecting cases and declining to apply SSR 16-3p retroactively) (citing, *inter alia*, *Cruse v Comm'r of Soc. Sec.*, 502 F.3d 532, 541-42 (6th Cir. 2007) ("We are not aware of any constitutional or statutory requirement that the Administration apply its [newly effective] policy interpretation rulings to appeals then-pending in federal courts, absent, of course, ex post facto or due process concerns not present here."); *Combs v. Comm'r Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The [Social

Security] Act does not generally give the SSA the power to promulgate retroactive regulations.")),
*report and recommendation adopted by* 2017 WL 2908875.

The Sixth Circuit, while declining to reach the retroactivity issue, has characterized SSR 16–3p as merely eliminating "the use of the word 'credibility' . . . to 'clarify that subjective symptom evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). The undersigned finds it unnecessary to decide this issue, as it is "largely academic here", *Goddard v. Berryhill*, 2017 WL 2190661, at *20 (N.D. Ohio). Both SSR 16-3p and 96-7p refer to the two-step process described above, and the factors listed in 20 C.F.R § 404.1529(c). Additionally, both rulings provide that an individual's subjective symptoms statements may not be rejected on the basis of objective evidence alone. *See* SSR 96-7p, 1996 WL 374186, at *6 ("[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence. A report of negative findings from the application of medically acceptable clinical and laboratory diagnostic techniques is one of the many factors that appropriately are to be considered in the overall assessment of credibility."); SSR 16-3p, 2016 WL 1119029, at *5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.[1] A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.") (footnote omitted). The Court's evaluation of Plaintiff's argument herein would be the same applying either SSR 16-3p or SSR 96-7p.

Here, the ALJ explained the two-step process for evaluating symptoms. (Tr. 43). She then summarized Plaintiff's testimony and noted that in making her RFC determination, she "ha[d] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." *Id.* The ALJ summarized Plaintiff's subjective symptom reports:

> The claimant reported pain, fatigue, stiffness, a limited agility, alleging that she can't bend, stoop, or walk for any length of time (Ex. 3E, 1, 6). The claimant testified that she sleeps frequently, but not a good solid sleep, and that she has problems climbing stairs, often resulting in falls. Further, the claimant testified she still experiences aches and pains, and has limited balance.

(Tr. 44). The ALJ then explained Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible *due to normal physical findings and other medical evidence detailed below*." *Id.* (emphasis added). Following this statement, the ALJ summarized the medical evidence, including: 1) Plaintiff's right hip fracture and subsequent surgery; 2) Plaintiff's lumbar spine x-ray, which showed "only mild degenerative changes"; 3) the consultative examination with Dr. Waldbaum, "which revealed largely normal findings"; and 4) the opinion evidence, including Dr. Waldbaum's opinion, Dr. Lele's opinion, and Dr. Congbalay's opinion, along with the ALJ's reasons for the weight given to each opinion. (Tr. 44-45). At the end of the ALJ's RFC analysis, which included the above credibility statement, the ALJ stated:

> In sum, the above residual functional capacity assessment is supported by the claimant's testimony that her hip healed well, and record evidence documenting the claimant's right hip alignment was stable, with no new factures identified, and a stable radiographic appearance of the orthopedic screw fixation femoral. Further evidence that supports the residual functional capacity incudes only mild degenerative changes of the lumbar spine and reversal of normal lumbar lordosis,

and normal findings on physical exam, such as stable, non-antalgic gait, normal range of motion bilaterally in the hips, and lumbar movements functional with no particular discomfort noted.

(Tr. 45) (record citations omitted).

The ALJ's decision as a whole, therefore, reflects that she did precisely what the applicable regulation says she may not: "reject [Plaintiff's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability work *solely because the available objective medical evidence does not substantiate [Plaintiff's] statements*." 20 C.F.R. § 404.1529(c)(2) (emphasis added); *see also* SSR 96-7p, 1996 WL 374186, at *6 ("[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence. A report of negative findings from the application of medically acceptable clinical and laboratory diagnostic techniques is one of the many factors that appropriately are to be considered in the overall assessment of credibility.").

Other courts in the Northern District of Ohio have held this to be reversible error. *See Anthony v. Comm'r of Soc. Sec.*, 2014 WL 4249782, at *8 (N.D. Ohio) (noting that the ALJ's explanation "shows that he discounted [the plaintiff's] credibility based solely on his determination that the objective medical evidence was insufficient to support her claims" and remanding after stating that "[w]hile the Commissioner may be correct that substantial evidence exists in the record to support the ALJ's credibility finding, both the Sixth Circuit and this court have reversed and remanded where the ALJ failed to comply with the applicable procedural requirements when conducting the analysis") (citing *Felisky*, 35 F.3d at 1039; *Romig v. Astrue*, 2013 WL 1124669, at *6 (N.D. Ohio)); *Romig*, 2013 WL 1124669, at *5 ("Although the ALJ was under no obligation to accept [the plaintiff's] testimony as credible, he was obligated to provide reasons for his credibility

finding that are sufficiently specific to allow subsequent reviewer, such as this Court, to understand the result. Here, the ALJ did not discuss any of the seven factors set forth in SSR 96-7p. While the ALJ mentioned some of [the plaintiff's] daily activities, he fails to explain how these activities either support or detract from her credibility."); *see also Knight v. Comm'r of Soc. Sec.*, 2015 WL 5916181, at *4 (E.D. Mich.) (finding ALJ's statements that "[t]he objective medical evidence does not fully corroborate the claimant's testimony regarding the extent of her limitations" and that claimant was not credible "for the reasons explained in this decision" insufficient when the ALJ "[did] not set forth those reasons.").

The Commissioner's arguments to the contrary are unpersuasive. Notably, the Commissioner contends:

> In accordance with the regulations, the ALJ discussed Plaintiff's testimony and allegations regarding the frequency and intensity of her symptoms and her treatment history. The ALJ observed that Plaintiff complained of 'pain, fatigue and stiffness' and limited mobility due to her impairments. The ALJ also acknowledged Plaintiff's testimony that she experienced diffuse pain and difficulty sleeping. The ALJ further documented Plaintiff's claims that she had difficulty climbing stairs, had limited balance, and sometimes fell[.]

(Doc. 19, at 7) (record citations omitted). While it is true that the ALJ summarized these statements in her opinion, she did not do in conjunction with her credibility analysis, and did not explain how Plaintiff's statements bore on the ALJ's credibility decision or her reasons for discounting those statements other than that they were not supported by objective evidence. *See* Tr. 44 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible due to normal physical findings and other medical evidence detailed below."); *see also Romig*, 2013 WL 1124669, at *5 ("While the ALJ mentioned some of [the plaintiff's] daily activities, he fails to explain how these activities either support or detract from her credibility."). Although an ALJ is not required to discuss every factor in 20 C.F.R. §

404.1529(c), *White*, 572 F.3d at 287, the regulation does require that she "consider" the listed factors. A review of the ALJ's credibility assessment here, Tr. 43-44, does not reflect consideration of any of the seven factors: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication, to relieve pain; 6) any measures used to relieve pain; and 7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *3 ("20 CFR 404.1529(c) . . . describe[s] the kinds of evidence, including the factors below, that the adjudicator must consider *in addition to* the objective medical evidence when assessing the credibility of an individual's statements") (emphasis added)

The Commissioner, in essence, reframes Plaintiff's argument as a challenge to the RFC and responds that "[s]ubstantial [e]vidence [s]upports the ALJ's [r]esidual [f]unctional [c]apacity [d]etermination." (Doc. 19, at 4). She then presents arguments in support of the ALJ's treatment of the opinion evidence and support for the ALJ's RFC determination as a whole. Even if the RFC determination is supported by substantial evidence, the ALJ's credibility finding can still be error. *See Cole v. Astrue*¸ 661 F.3d 931, 940 (6th Cir. 2011) ("An ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'") (quoting *Blakely*, 581 F.3d at 407). Although the Commissioner may indeed be correct that substantial evidence exists in the record to support the ALJ's credibility finding, the ALJ here failed to comply with applicable procedural requirements when performing her analysis thereof. Remand is therefore required.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB not supported by substantial evidence. The Court therefore remands the case under Sentence Four of 42 U.S.C. § 405(g) for proceedings consistent with this opinion.

 s/James R. Knepp II
United States Magistrate Judge